**Kirk D.Wiliams**

**682 Plaza Avenue, Unit#A**

**Sacramento CA 95815**

**kirkdwilliams00@gmail,com**

**(916)349-5009**

# FILED

JUN 1 7 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRIST OF CALIFORN

**KIRK D. WILLIAMS**

        **PLAINTFF,**

**VS.**

**McDonald's Corporation,**

        **DEFENDANT,**

_____/

**CASE NO** 2:20 CV 1214

**JURY TRIAL DEMANDED** TLN

DB

PS

## <u>INTRODUCTION</u>

- **Plaintiff KIRK D. WILLIAMS, on behalf of himself and others**

1

similarly         situated asserts the following claims against Defendant McDonald'S.COM, INC. as follows.

- Plaintiff is a visually-impaired and legally blind person who requires audio capacity as effective communication and he uses screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

- Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 379,000 visually impaired persons live in the State of California.

- Plaintiff brings this civil rights action against McDonald's.COM, INC. ("Defendant" or "Company") for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

- Because Defendant's website,      ...ьonald s.COM (the "Website" or "Defendant's Website "), is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so the Defendants corporate policies, practices, and procedures, so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

- This Court has subject-matter jurisdiction over this action under 28 U.S.C * 1331 and 42 U.S>C *12181, as Plaintiff's claim arise under Title III of the ADA, 42 U.S.C. *12181, *et seq.*, and 28 U.S.C. * 1332.

- This court has supplemental jurisdiction under 28 U.S.C *1376 over Plaintiffs _California's Disability discrimination provisions promulgated by California Civil Code 51(a) cited as the California Unruh Act, and Civil Code 54.1.(a)(1) cited as California Disabled Person Act.

- Venue is proper in this district under 28 U.S.C. * 1391 and (b)(1) and (2) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

  - Defendant is subject to personal jurisdiction in this District,. Defendant has been and is committing the acts or omissions alleged herein in the city of Sacramento that caused injury and violated rights promulgated by the ADA, which  prescribes to Plaintiff and to other blind and other visually-impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this district: on separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's Website with respect to Defendant's locations in  the county of Sacramento These,  barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting Defendant's website such as "McDonald's restaurants located at 2517 Del Paso Blvd, and 5425 Fruitridge Road, Sacramento California  Plaintiff attempting to obtain about Defendant's affiliated restaurants (locations and hours and other important information) in addition McDonald's  owns and operates 1,165 physical brick

3

and mortar restaurants in the State of California, and that there exist 75 restaurants within the county of Sacramento.

- This Court is empowered to issue a declaratory judgement under 28 U.S.C **2201 and 2202.

### THE PARTIES

- The Plaintiff Kirk Williams, at all relevant times, is a resident of Sacramento, CA. Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, 42 U.S.C. * 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR ** 360.101 *et seq.*, and the California Unruh A(CUA) and California Disabled Person Act (CDPA).

- Defendant McDonald's.COM, INC. is and was at all relevant times herein a Foreign Corporation with its principal executive offices in Chicago IL,

- and is doing business in the State of California. And that McDonald's is the largest fast food restaurant in the world with more than 37, 000 locations within 120 countries ,and for the 2019 fiscal year McDonald's $6 billion on revenue of $21.1 billion

- McDonald's sells its product throughout the United States.

- Millions of McDonald's customers are located in the State of California, McDonald's website provides to the public important goods and services. Defendant's Website provides consumers with access to an array of goods and services including information about their vast array of goods and services,rewards program, special promotions, gift cards, prior purchase history, recommended products and services, return policies and shipping and delivery.

- McDonald's owns and operates self-service checkout kiosks machines which are located in its restaurants locations and the kiosks uses counter top terminals to process credit card and debit card purchases but that transaction machines are inaccessible to the blind and visually impaired, and that McDonald's offers its

4

sighted customers two options for checking 0ut at the completion of their purchases they can check out with the assistance of an employee who operates a register, or they can use a self-service checkout kiosk  with a point of sale terminal to scan and pay for their purchases without employee assistance, but that the lines at the self-service checkout kiosk are often shorter and move more quickly than the employee assisted checkout option, many customers opt for the convenience of the self service checkout kiosks, moreover, the blind and visionally impaired persons do not have the option of self service checkout available to all other customers. Although McDonald's began using self-service kiosks well after the enactment of the  ADA, it failed to ensure that the new technology would be accessible to the blind And visionally impaired  persons, and consequently. blind and visionally impaired persons customers cannot independently operate the self service checkout kiosks, as all other customers can. In addition, customers may order food on line and they can pick up orders in the drive through, at the counter or outside but that blind and visionally impaired persons can not independently use the website but for the combined inaccessibility of  the website and the self service checkout kiosks

- 

  McDonald's is a  public corporation) which sells food and other related products throughout the United States including a large number of brick and mortar restaurants in the City and County of Sacramento, and  throughout the State of California,.  Consumers can order food from the website and ipick up their orders at the drive through or at the counter or outside but that this service is not available to the blind or visionally impaired persons due to the inaccessibility of the website

- Defendant's restaurants  are public accommodations within the definition of Title III of the ADA,, 42 U.S.C * 12181(7)(F). Defendant's Website is a service, privilege, or advantage that is heavily integrated with Defendant's physical retail clothing stores and operates as a gateway thereto.

**NATURE OF ACTION**

- The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning. Banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

- In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the contest on a refreshable Braille display, moreover, the duty to provide access, or to provide axillary aids and/or reasonable accommodation to ensure effective communication with the blind and visually impaired is the responsibility of the defendant. And that Audio is the least restrictive mode of communication and the onus of providing such services are on the corporation. The defendant is receiving government funds, maintaining contracts with the government, and is open to the general public. Therefore, failure to provide axillary aids and/or accommodations is in violation of the ADA.

- Blind and visually and visually-impaired users of Windows operating system-enabled computers and devices have seral screen reading software programs available to them. Some of these programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer, nevertheless, the Defendant bears the legal obligation to ensure nondiscrimination on the basics of disability.

- For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website is not capable of being rendered into text, the blind or visual-impaired user is unable to access the same content available to sighted users.

6

- The international website standards organization the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0")  WCAG 2.0 are well established guidelines for making websites accessible to blind and visually impaired people.  These guidelines are universally followed by most large businesses entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility.

- Non-compliant websites pose common barriers encountered by blind and visually impaired persons include but are not limited to, the following:

  - A text equivalent for every non-text element is not provided;

  - Title frames with text are not provided for identification and navigation;

  - Equivalent text is not provided when using scripts;

  - Forms with the same information and functionality as for sighted persons are not provided;

  - Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

  - Text cannot be resized without assistive technology up to 200% without losing content or functionality;

  - If the content enforces a time limit, the user is not able to extend, adjust or disable it;

  - Web pages do not have titles that describe the topic or purpose;

  - The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

  - One or more keyboard operable user interface lacks a mode

of operation where the keyboard focus indicator is discernible;

- The default human languages of each web page cannot be programmatically determined;

- When a component receives focus, it may initiate a change in context;

- Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

- Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

- In content which is implemented using markup languages, elements do not have complete start and end tags, elements are not tested according to their specification, elements may contain duplicate attributes and/or any ID's are not unique:

- Inaccessible Portable Document Format (PDF's);and

- The name and role of all user Interface elements cannot be programmatically set;  determined; items  that can be set by the user cannot be programmatically set; and/or modification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

**Defendant's Barriers on its Website**

- Defendant offers commercial website, ѡ ѡ ѡ.................  , to the public.  The website offers features which allow all consumers to access goods and services which Defendant offers in connection with their locations.  The goods and services offered by Defendant on its website include, but are not limited to the following, which allow consumers  to find information about their vast array of

8

goods and services, manufactory's warranties, rewards program, special promotions, gift cards, prior purchase history, recommended products and services. Return policies and shipping and delivery.

- It is upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually impaired users, access to Defendant's website, and Plaintiff is a visually impaired and legally blind person, who can not use the computer without the assistance to therefore specifically deny the goods and services that are offered and are heavily integrated with Defendant's retail stores,  Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's retail stores and numerous goods, services, and benefits offered to the public through the website.

- Plaintiff is a visually impaired person, who cannot use the computer without the assistance of screen-reading software, or use of independent audio output  constructed in the website independent of any other source, however a proficient JAWS screen-reader user it to access the internet.  Plaintiff has visited the website on separate occasions using JAWS screen-reader. However, Defendant's failure to provide audio capability through its website is a denial of full and equal access to goods and services offered to the public.

- Plaintiff is a visually impaired person and during Plaintiff visits to the website the last occurring in 2019. Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Defendant's physical locations in New York by being unable to learn more information about their vast array of goods and services, manufacturer warranties, rewards program, special promotions, gift cards, prior purchase history, recommended products and services, return polices and shipping

9

and delivery.

- **While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to, the following:**

  - **Lack of Alternative Text ("alt text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website.  Web accessibility requires that alt-text be coded with each picture so that screen-reading software cans peak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box Shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Amazon customers are unable to determine what is on the website, browse, look for retail clothing stores and locations and hours of operation, check out Defendant's services, rewards program, gift cards, return policies and shipping & delivery;**

  - **Empty Links That Contain No Text causing the function or purpose of that link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;**

  - **Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and**

  - **Linked Images Missing Alt Text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.**

<u>Defendants Must Remove Barriers to its Website</u>

27   Due to the inaccessibility of Defendant's Website; Blind and visually-impaired customers such as plaintiff, who need screen-reader, and audio capacity, cannot fully equally use or enjoy

the facilities, goods, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full equal access in the past, and now deter Plaintiff on a regular basis from accessing the Website.

**28   These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's store location and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's physical retail stores on its Website, preventing Plaintiff from visiting the locations, Plaintiff intends to visit Defendant's restaurants in the future if he could access their website in order to return food items that he may want to return to**

**29.   If the Website was equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.**

**30.   Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and not independently unusable by the blind and visually impaired people.**

**31.   Because simple compliance with the WCAG2.0Guidelines would provide Plaintiff and other visually impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination including but not limited to, the following policies or practices:**

**a.   Constructing and maintaining a website that is inaccessible to vision ally-impaired individuals including Plaintiff;**

**b.   Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired indivduals, including Plaintiff and**

**c.   Failing to take action to correct access barriers in the face if substantial harm and discrimination to the blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.**

**32.   Defendants therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.**

11

33.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

In the case of violation of . . . this title injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . .  Where appropriate, injunctive relief shall also include requiring the modifications of a policy. . .

42 U.S.C. Sec. 12188(a)(2).

34     Because Defendant's Website have never been equally accessible, and because Defendant lacks corporate policy that is reasonably calculated to cause its Website to become and remain accessible. Plaintiff invokes 42 U.S.C. Sec. 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff("Agreed Upon Consultant") to  assist Defendant to comply with WCAG 2.0 guidelines for Defendant's website. The Website must be accessible for individuals who use computers, laptops, and smart phones, moreover, Defendant's Website should be independently unusable, and readily available to provide access to all individual with a disability. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the agreed Upon Consultant to:

- Train Defendant's employees and agents who  develop the Website on accessibility compliance under the WCAG 2.0 guidelines;

- Regularly check the accessibility of the Website under the WCAG 2.0 guidelines:

- Regularly test accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under WCAG2.0 guidelines: and

- Develop policy accessibility policy that is clearly disclosed on Defendant's

- Website, with contact information for users to report accessibility-related problems and require that any third-party venders who participate on its Website to be fully accessible to the disabled by

12

confirming with WCAG2.0 criteria.

35.     If the website was accessible, Plaintiff and similarly situated blind and visually-impaired people could independently view goods and service items, locate Defendant's retail stores and hours of operation, shop for and  other wise research related goods and services available via the Website.

36.     Although Defendant may currently have centralized policies regarding maintaining and reporting its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently  usable by, blind and other visually-impaired    consumers.

37.     The defendants have, upon information and belief, invested substantial sums in developing and maintaining the defendants' website and the defendants have generated significant revenue from the defendants' website. These amounts are far greater than the associated cost of making the defendants' website equally accessible to visually impaired customers.

38.     Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

# CLASS ACTION ALLEGATIONS

39.     Plaintiff, on behalf of himself and others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23 (b): all legally blind individuals in the United States who have attempted to access Defendants Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's website and physical locations, during the relevant statutory period.

40.     Plaintiff, on behalf of himself and all others similarly situated, seeks certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23 (b)(2): all legally blind individuals in the State of New

York who have attempted to access Defendant's Website and as a result have been denied to access to the equal enjoyment of goods and services offered in Defendant's website and physical locations, during the relevant statutory period.

41.     Plaintiff, on behalf of himself and all others similarly situated, seeks certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b): all legally blind individuals in the City of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's website and physical locations, during the relevant statutory period.

42.     Common questions of law and fact exist amongst Class, including:

- Whether Defendant's Website is a "public accommodation" under the ADA;

- Whether Defendant's Website is a "place or provider to public accommodations" under the UCRA

Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the Unruh Act

43.     Plaintiff's claims are typical of the Class and the Subclasses. The Class and the Subclasses, similarly to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA, and Unruh Act, by failing to update or remove access barriers on its Website so it can  be independently accessibly to the Class and Subclasses.

44.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass Members because Plaintiff has retained and is represented by counsel competent and experience in complex class action litigation, and because Plaintiff has no interests antagonistic to Class Members. Class certification of the claims is appropriate under FED. R. Civ. P. 23(b)(2) because

14

Defendant has acted or refuse to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a Whole.

45.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclasses Members predominate over affecting only individual Class and Subclasses Members, and because a class action is superior to other available methods for the fair and efficient adjunction of this litigation.

46.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with the visual disabilities throughout the United States.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE ADA, 42 U.SC.§12181 et seq.

47.     Plaintiff, on behalf of himself and the California State  Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein  paragraph as if fully set forth herein.

48.     Section 302(a) of Title III of the ADA, 42 U.S.C § 12101 ET seq., provides:


No individual shall be discriminated against on the basis of disability in full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any  place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42U.S.C § 12182(a).

49.     Defendant's retail stores are public accommodations within the definition of Title II of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or advantage of Defendant's retail stores. The Website is a service that is heavily integrated with these locations and is a  gateway thereto.

50.     Under Section302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.SC. § 12182(b)(1)(A)(i).

51.     Under Section 302(b)(1) of Title III of the  ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the good, services, facilities, privileges, or accommodation, which is equal to the opportunities afforded to other individuals.

42 U.S.C §12182(b)(1)(A)(ii).

52.     Under section 302(b)(2) of Title III of ADA, unlawful discrimination also includes, among other things:

[A] failure to make reasonable modifications in  policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or  otherwise treated differently than other individuals because of the absence

16

of auxiliary aids and services, unless the entity can demonstrate that taking such steps would be fundamentally alter the nature of the  good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. §1282(b)(2)(A)(ii)-(iii).

53.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.SC. §§ 12102(1)(A)-(2)(A). Furthermore, plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

54.    Under 42 U.S.C § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE UNRUH ACT

55.    Plaintiff, on behalf of himself and the California  State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56.    California's Civil Law  provides that is "an unlawful discriminatory

practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation... because of the... disability of any person, directly or indirectly , to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges thereof."

57.   Defendant's physical locations are located in State of California and throughout the Untied States and constitute public accommodations within the definition of California Civil Law,  Defendant's Website is a service, privilege or advantage of Defendant. Defendant's Website is a service that is heavily integrated with these physical locations and is a gateway thereto.

58.   Defendant is subject to California Civil Law because it owns and operates its physical locations and Website. Defendant is person within the meaning of California's Civil Rights Law

59.  Defendant is violating California's Civil Rights Law, in refusing to update or remove access barriers to its Website, causing its Website and services integrated with Defendant's physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to facilities, goods and services that defendant makes available to the non-disabled public.

60.   Under California's Civil Rights Law, it is  unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alert the nature of such facilities, privileges, advantages, or accommodations being offered or would result in an undue burden.

61.   Under California's Civil Rights Law, it is  unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter nature of facility, privilege, advantage or accommodation being

offered or would result in an undue burden.

62.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

63.     Defendant's actions constitute willful intentional discrimination against the class on the basis of disability in violation of the California's Civil Rights in that Defendant has:

- Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/ or

- Constructed and maintained a website that is inaccessible to blind class members with knowledge of discrimination; and/ or

- Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

64.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are on going.

65.     Defendant discriminates, and will continue in the future to discriminate against Plaintiff and California YoState Sub-Class Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/ or opportunities of Defendant's Website and its physical locations under § 269(2) et seq. and or its implementing regulations . Unless the Court enjoins Defendant from continuing

to engage in these lawful practices, Plaintiff and Sub-Class Members will continue to suffer irreparable harm.

66.     Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive

relief to remedy the discrimination.

67.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under California's Civil Rights Law for each and every offense with the statutory amount of four thousands dollars per offense

68.    Plaintiff is also entitled to reasonable attorney's fees and costs.

69.    Under California's Civil Law and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION

## VIOLLATION OF THE CALIFORNIA STATE CIVIL RIGHTS LAW

70.    Plaintiff, on behalf of himself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71. Plaintiff served notice thereof upon the United States Attorney General as is required by law

72.    California's Civil Rights  provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. . ."

73.    California's . Civil Rights  provides "no person because of. . . . disability, as such term is defined in section two hundred ninety-

two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as denied in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

74.    Defendant's Sacramento City physical locations are sales establishments and public accommodations within the definition of California's Civil Rights Defendant's Website is a service, privilege or of Defendant and its Website is a service that is heavily imagined with these establishments and is a gateway thereto.

75.    Defendant is subject to California's Civil Rights Law because it owns and operates its physical locations and Website. Defendant is a person within the meaning of California Civil Rights Law.

76.    Defendant is violating California's Civil Rights Law in refusing to update or remove access barriers to its website, to its Website, causing its Website and the services integrated with Defendant's physical locations to the completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that defendant makes available to the non-disabled.

77.    California's Civil Rights Law states that "any corporation which shall violate any of the provisions 0.shall for each and every violation thereof be liable to a penalty of not less than one-dollars nor more than five-hundred dollars, to be recovered by the person aggrieved thereb

78.    Under California Civil Rights Law "Any person who shall violate any of the provision s of the for going section, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than a one-hundred dollars nor more than five-hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside. . ."

79.    Defendant has failed to take any equitably steps to remedy

21

its discriminatory conduct. These violations are ongoing.

80.    Defendant discriminates, and will continue in the future to discriminate against Plaintiff and New York State Sub-Class members on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges there of in  § 40 et seq. and/ or its implementing regulations and/or corporate policies

81.    Plaintiff is entitled to compensatory damages of four thousands dollars per instincts, as well as civil penalties and fines under California's Civil Law for each and every offense.


## FORTH CAUSE OF ACTION

### VIOLATIONS OF THE UCRA

82.    Plaintiff, on behalf of himself and the Sacramento City Sub- Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83.    California's Civil Rights )provides that" It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of. . . disability. . . directly or indirectly, to refuse, withhold from or denied to such person, any of the accommodations, advantages, facilities or privileges thereof."

84.TDefendant's locations are public accommodations within the definition of California's  Civil Rights law and its Website is a service that is heavily integrated with its establishments and is a gateway thereto.

85.    Defendant is subject to UNRUH ACT because it owns and operates its physical locations in the city of Sacramento, and County of Sacramento, and its website , making it a person within the meaning of California's Civil Rights Law.

86    Defendant is violating California's Civil Rights law in refusing to

update or remove access barriers to the Website and the Self service checkout kiosks causing its website and self service checkout kiosk and the services integrated with its physical restaurants locations to be completely inaccessible to the blind and the visionally impaired persons. This inaccessibility denies blind and visionally impaired persons full and equal access to facilities, goods, and services that Defendant makes available to non-disabled public.

87     n prohibited by provisions Defendant is required to make reasonable accommodation to the needs of a person with disabilities. . . any person prohibited by the provisions of California Civil Rights Law, from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to ...enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity.


88.     Defendant's action constitutes willful intentional discrimination against the City and County of Sacramento Sub-Class on the basis of a disability in violation of the California's Civil Rights law, in that the Defendant has;

        a. Constructed and maintained a website that is sufficiently intuitive and/or obvious that it is

            inaccessible to the blind class members

        b----Constructed and maintained self-service checkout kiosks that is sufficiently intuitive and/or

            obvious that is inaccessible to the blind class members; and/or

        c     Failed to take actions to correct these access barriers in the face of substantial harm  and

            discrimination to blind class.

89     MCDonald's self-service checkout kiosk also require customers to make selections using touchscreen buttons that cannot be distinguished non-visually customers.  For example, to complete a

transaction after scanning in all items to be purchased, a customer must press buttoms  yet there is no audible indicationfrom the kioskas to where this buttom is located or need to be selected.

90      As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on he basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and Self Service Checkout Kiosks, and its estabishments under and/or

corporate policies  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the sub-class will continue to suffer irreparable harm.

91      Defendant's action were and are in violation 0f the UCRA and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination

92      Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines, and statutory award for violations of the Unruh Act. And for punitive damages

93      Plaintiff is also entitled to a reasonable attorney's fees and costs.

94      Under California's Civil Law and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgement as set forth below;

## FIFTH CAUSE OF ACTION

## DECLARATORY RELIEF

95.      Plaintiff, on behalf of himself and the class and California State and City and County of Sacramento and sub-class members, repeats and realigns every allegation of the proceeding paragraphs as if fully set forth herein.

**96**      An actual controversy has arisen and now exist between the parties in that Plaintiff contends and is informed and believes that Defendant denies, that its website and its self service checkout kiosks contains access barriers denying blind customers the full and equal access to goods, service, and facilities of its website and self service checkout kiosks by extension of its physical locations, which Defendant owns, operates, and control and fails to comply with applicable laws including but not limited to Title III of the Americans with Disabilities Act, U.S.C.Sections 12182 prohibiting discrimination against the blind

**97**      A judicial declaration is necessary and appropriate at this time in order to that each of the parties may know their respective rights and duties and act accordingly, an among those issues but not limited to is that Plaintiff seeks the Court to declare and define the term words or phase "ind law.

**98**      Defendant currently maintain a of designed of McDonald's self-service checkout kiosks which require sight to use: images are displayed visually on the screen, but do not announced or described through audio output The kiosks fail to provide any speech out during a transaction, moreover nor is the transaction terminal machine audiable.

**99**      Defendant is also violating the UCRA, Civil Code Sec. 51 et seq., because the conduct alleged herein violates various provisions of the ADA, U.S.C. Sec. 12181 et seq., as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation for the UCRA.

**100**      The action of the Defendant violates UCRA, Civil Code Sec. 51 et seq., and Plaintiff is therefore entitled to relief remedying the discrimination.

**101**      The Plaintiff is entitled to statutory minimum damages pursuant to Civil Code Sec. 52 for each and every offense.

102      Plaintiff is also entitled to reasonable attorneys' fees and cost.

**PRAYER FOR RELIEF**

25

WHEREFORE, Plaintiff  Kirk D. Williams, request that this Court enter judgment in their favor and award them the following relief:

- A permanent injunction prohibiting McDonald's from violating the ADA and

   Requiring McDonald's to make its website and its self service checkout kiosks in California and throughout the United States accessible to the blind and visionally impaired users.

b    A declaration that McDonald's has and continues to violate the ADA;

c    An award of Plaintiff Kirk D. Williams. And for reasonable attorney fees and cost.


d    Such other and further relief as the Court may deem just.



RESPECTFULLY SUBMITTED

*Kirk D. Wms*

------------------------------------------------------

BY KIRK D. WILLIAMS iN  PRO SE

Dated
6-16-2020

26